# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ann C. Williams | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 886 | **DATE** | 7/14/2000 |
| **CASE TITLE** | TYPOGRAPHICS PLUS, INC. vs. I.M. ESTRADA & CO.,INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)    ☐ General Rule 21    ☐ FRCP41(a)(1)    ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Pursuant to memorandum opinion and order, the court grants Horty's motion to dismiss Count II with prejudice and grants his motion to dismiss Count III without prejudice [13-1]. The court grants Typographics leave to file a second amended complaint consistent with this opinion. Failure to amend Count III of the first amended complaint within 30 days of this ruling will result in dismissal of Count III with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUL 19 2000 date docketed | |
| ✓ | Docketing to mail notices. | | | 25 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DL | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TYPOGRAPHICS PLUS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 98 C 886 |
| I.M. ESTRADA & CO., INC., ) | |
| WILLIAM HORTY AND UNKNOWN ) | |
| PERSONS ) | |
| Defendants. ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Typographics Plus ("Typographics") brought suit against Defendants I.M. Estrada & Co. ("Estrada") and William (Bill) Horty ("Horty") for breach of contract, common law fraud and violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2 *et seq.* Now before the court is Individual Defendant Horty's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and 9(b). For the reasons set forth below, the court grants Horty's motion to dismiss Count II with prejudice and Count III without prejudice.

25

## Background

On a motion to dismiss, the court accepts as true the factual allegations of the complaint. Lashbrook v. Oerkfitz, 65 F.3d 1339, 1343 (7th Cir. 1995) (citations omitted). Typographics is an Illinois corporation with its principal place of business in Cook County, Illinois. Bill Horty is a person who controls and directs the business and operations of Estrada, a corporation with it principal place of business in Connecticut. Horty is also an officer and director of Estrada. (Am. Compl. ¶ 1-3.)

In 1997, Estrada placed advertising in a publication called *Printers Hot Line* for the sale of various equipment and services. (Id. ¶ 6.) Upon seeing the advertising, a representative from Typographics, Michael Izrael ("Izrael") called Horty to speak with him regarding the products advertised. (Id. ¶ 8.) After having telephone conversations pertaining to the items for sale and the price and terms of items for sale, Typographics agreed to purchase a piece of equipment, the AGFA Select Set 7000 (hereinafter "the equipment") under the following terms: (1) a total purchase price of $44,000; (2) payment of $14,666.67 upon submission of a written confirmation of the oral agreement to purchase; (3) payment

of the balance on delivery of equipment. (Id. ¶ 9.) Soon thereafter, Estrada sent Typographics a written invoice, which Typographics representatives signed and returned, along with a check in the amount of $14,666.67, to Estrada. (Id. ¶ 11.)

Between the dates of April 29, 1997 and June 16, 1997, Horty and Izrael had additional phone conversations, after which, Typographics agreed to purchase an additional piece of equipment, the Harlequin Software RIP (hereinafter "the equipment"). Typographics agreed to (1) a purchase price of $10,500; (2) to pay $6,000 upon submission of a written confirmation of the oral understanding; and (3) to pay the balance upon delivery. (Id. ¶ 12.) Again, Estrada sent Typographics an invoice which Typographics then executed and sent back along with a payment in the amount of $6,000. (Id. ¶ 14.)

Following the execution of these agreements, Estrada failed and refused to deliver the equipment Typographics ordered. At the same time however, Estrada has not returned the $20,666.67 Typographics paid in down payments for the equipment. (Id. ¶ 15.) At various times, Estrada, through Horty and others, would represent to Typographics that either the

equipment had been shipped, even though it had not, or that Estrada would be shipping each of the items, even though it never did. (Id.) Accordingly, Typographics claims that Estrada never intended to ship either item or to otherwise fulfill its obligation to deliver the equipment as promised. In addition, Typographics maintains that Horty knew that Estrada would not and was not in a position to ship and deliver the equipment Typographics ordered and that Horty never intended to fulfill any of the obligations described in the invoices. (Id.)

Typographics filed its three-count First Amended Complaint ("Complaint") seeking monetary damages for breach of contract, common law fraud and consumer fraud under the Illinois Consumer Fraud Act. Horty then filed his motion to dismiss.[1]

## Analysis

A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. Demitropoulos v. Bank One Milwaukee, N.A., 915 F. Supp. 1399, 1406 (N.D. Ill. 1996) (citing Gibson v. City of Chicago, 910

---

[1] On February 2, 1998, this court entered a judgment in plaintiff's favor and against corporate defendant Estrada on Counts I through III.

F.2d 1510, 1520 (7th Cir. 1990)). Therefore, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. Zinermon v. Burch, 494 U.S. 113, 118 (1990); Colfax Corp. v. Illinois State Toll Highway Auth., 79 F.3d 631, 632 (7th Cir. 1996) (citations omitted). The court will dismiss a claim only if "it appears beyond doubt that [the plaintiff] can prove no set of facts in support of his claim which would entitle him to relief." Colfax, 79 F.3d at 632 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Horty argues that in both Counts II and III, Typographics fails to state facts with sufficient particularity to support his claims for fraud and for a Consumer Fraud Act violation as required by Federal Rule of Civil Procedure 9(b). In response, Typographics maintains that under Federal Rule of Civil Procedure 8(a) and to defeat a motion under Rule 12(b)(6), all it needed to do was set forth a plain statement of the claims involved that put defendants on notice of the allegations being made.

I. Common Law Fraud Claim

A.   Rule 9(b)

Horty claims that instead of providing defendants with the

information required under Rule 9(b), Typographics offers nothing but unsupported conclusions. Typographics contends that under Federal Rule 12(b)(6), it has stated sufficient facts to state a claim for fraud. To state a claim for common law fraud in Illinois, Typographics must allege: (1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury. See Verda Industries, Inc. v. Lightning Deterrent Corp., No. 94 C 1693, 1995 WL 548610, *6 (N.D. Ill. Sept. 13, 1995).

Horty correctly argues that Typographics has a higher pleading burden under Federal Rule of Civil Procedure 9(b). The rule states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). As such, when stating a claim for fraud, plaintiffs must state (1) the identity of the person who made the misrepresentation; (2) the time, place and

content of the misrepresentation; and (3) the method by which the misrepresentation was communicated to the plaintiff. See Uni*quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 923 (7th Cir. 1992).

In its Complaint, Typographics alleges that Horty "knew" Estrada could not obtain the equipment Typographics ordered and that he "knew" Estrada would not be delivering the equipment ordered. Rule 9(b) requires that plaintiffs plead in detail the "who, what, when, where, and how" of the circumstances constituting the fraud. See DiLeo v. Ernst and Young, 901 F.2d 624, 627 (7th Cir. 1990). While Typograhics does identify the "who" of the fraud, plaintiff does not make the "what" very clear at all. Typographics alleges that Horty accepted orders knowing that Estrada could not fill them, that he accepted deposits without delivering equipment ordered, that he depleted Estrada's funds as part of his fraudulent scheme, that he placed an ad in a trade magazine and that he "made false and deceptive allegations as to having shipped equipment to Typographics" when he knew no equipment had been, or ever would be, shipped.

Plaintiff's repeated use of legal conclusions to describe its

allegations casts serious doubt on whether Typographics has met its burden under Rule 9(b). Additionally, Typographics has offered little in the way of times, places and other factual data to support its claim of common law fraud. See Cumis Insurance Society v. Peters, 983 F. Supp. 787, 792 (N.D. Ill. 1997) (finding that plaintiff made no attempt to specify what fraudulent representations and promises were made other than in accounting statements and checks).[2] Still, under notice pleading, Typographics may have offered enough facts concerning the fraud. "Rule 9(b)'s requirement that fraud be alleged with particularity is relaxed where facts that the plaintiff would otherwise be required to plead are in the exclusive possession of the defendants." Whirlpool Financial Corp. v. GN Holdings, Inc., 873 F. Supp. 111, 119 (N.D. Ill. 1995) aff'd., 67 F.3d 605 (7th Cir. 1995). Ultimately, the court need not reach this question however, because plaintiff has not alleged sufficient facts to hold Horty

---

[2] The court also notes that Typographics' claim appears, at least in part, to allege "promissory fraud" which under Illinois law "is actionable only if it either is particularly egregious or, what may amount to the same thing, it is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance." Desnick v. American Broadcasting Communications, Inc., 44 F.3d 1345, 1354 (7th Cir. 1995). Plaintiff has not plead facts describing a scheme that was particularly egregious, nor has it identified, in any detail, a pattern of deceptions or enticements.

liable as an individual.

## B. Alter Ego Theory

Alternatively, Horty argues that under the heightened pleading standard set forth in Rule 9(b), Typographics failed to allege facts sufficient to support his claim that Estrada is merely a sham corporation from which Horty, as an individual, unlawfully diverts revenue. Horty maintains that no facts have been submitted to suggest that Estrada was the Horty's alter ego and that the court should pierce the corporate veil and hold him liable as an individual for Estrada's failures under the contract. Typographics, however, contends that the Complaint contains ample facts to establish Estrada's liability as an individual under an alter ego theory.

Ordinarily, a corporation is a legal entity that exists separate and apart from its shareholders, directors, and officers, who are not generally liable for the corporation's debts and obligations. However, a court may "pierce the corporate veil" where the corporate entity "would otherwise present an obstacle to the protection of private rights, or where the corporation is merely the alter ego or business conduit of the governing

or dominant personality." Hystro Products, Inc. v. MNP Corporation, 18 F.3d 1384, 1390 (7th Cir. 1994) (interpreting Illinois law).

Illinois courts apply a two-part test to determine whether to pierce the corporate veil: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances must exist such that adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences. See Hystro, 18 F.3d at 1388-89. In determining whether there is sufficient unity of interest and ownership between Estrada and Horty to warrant piercing the corporate veil, the court will look to several factors: (1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation at the time; (6) nonfunctioning of other officers or directors; (7) absence of corporate records; and (8) whether the corporation is a mere facade for the operation of dominant stakeholders. See Tome Engenharia E Transpoprtes v. Malki, No. 94 C 7427, 1996 WL 172286, *2 (N.D. Ill. Apr. 11, 1996).

A review of the Complaint suggests that no piercing of the corporate veil is warranted. Specifically, Typographics alleges that, on information and belief:

> Estrada is a thinly and undercapitalized entity having no assets available to fulfill its obligations or undertakings and Horty, individually . . . created Estrada and operates the corporation as a mere shell used to further a scheme to obtain deposits for equipment neither Horty nor Estrada ever intend to actually deliver.
> . . .
>
> Horty, individually and/or acting with Unknown Persons, has accepted orders in the name of Estrada from purchasers in Illinois . . . and has regularly and knowingly accepted deposits and failed, as part of a general scheme and practice, to deliver the equipment involved. . . .
>
> All of the proceeds of deposits and other revenue received by Estrada are diverted from the corporation to Horty, individually . . . and Horty knowingly depletes the available cash of Estrada as part of a scheme to obtain deposits for equipment Horty and Unknown Persons know will not be delivered and in fact they never intend to deliver.

(Am. Compl. ¶ 21.) Typographics then goes on to allege that Horty knew Estrada had no money to purchase the equipment plaintiff ordered, that Horty intended to divert the money Typographics sent under the agreement for his own use and purposes, and that he placed an ad in the *Printers Hot Line* even though he knew neither he nor Estrada had any of

the advertised equipment available. (Am. Compl. ¶ 22.)

Beyond its allegation that Estrada is thinly and under-capitalized, with no assets to fulfill its obligations, Typographics fails to include any facts to support its claim that Estrada is a sham corporation and Horty's alter ego. The mere assertion that Horty operates Estrada as a mere shell to further his fraudulent schemes is not enough to satisfy the requirements of 9(b), even under the liberal notice pleading requirements of this court.

Even were Typographics to satisfy the first prong of the test, plaintiff's claim fails on the second prong. To meet the requirements of the test's second prong, Typographics must allege facts sufficient to establish that adherence to the fiction of separate identities would sanction a fraud or promote injustice. "Although the 'promote injustice' test requires something less than an affirmative showing of fraud, it requires something more than the mere prospect of an unsatisfied judgment." Tome, 1996 WL 172286 at *5. "[C]ourts that properly have pierced corporate veils to avoid 'promoting injustice' have found that, unless [they] did so, some 'wrong' beyond the creditor's inability to

collect would result." Sea-Land Services, Inc. v. Pepper Source, 941 F.2d 519, 522-24 (7th Cir. 1991).

Here, Typographics attempts to satisfy its burden by alleging that Horty was the principal actor, working through Estrada, to perpetrate a fraud against plaintiff. Typographics claims that it was Horty who made the agreement with plaintiff, who represented that the equipment Typographics ordered had either been sent or was being shipped, and who kept Typographics' deposit without ever delivering any merchandise. No facts have been alleged however, to show that unless the court holds Horty individually liable, it will be sanctioning some fraud or injustice. In fact, Typographics obtained judgment on all three counts against Estrada in the amount of $129,000.

Illinois courts have pierced the corporate veil when failure to do so would unfairly enrich one of the parties, see B. Kriesman & Co. v. First Arlington Nat'l Bank, 415 N.E.2d 1070 (Ill. App. 1980), or when a corporate owner uses corporations to avoid responsibilities to creditors and is unjustly enriched, see Sea-Land v. Pepper Source, 993 F.2d 1309, 1312 (7th Cir. 1993). Typographics has not plead any facts to suggest

that without piercing the veil, Horty would be unjustly enriched or be able to avoid any financial obligations he might have to plaintiff as an employee or officer of Estrada. As such, the court concludes that Typographics has plead insufficient facts to support its alter ego theory and the court has no reason to pierce the corporate veil. Therefore, the court will grant Horty's motion to dismiss Count II.

## II. Illinois Consumer Fraud Act Claim

Count III of Typographics' Complaint purports to state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA"). Horty again argues that Typographics has failed to allege sufficient facts to state a claim, against Horty individually, under the CFA.

As an initial matter, although the CFA was created to protect consumers, a corporation may have standing to bring a CFA action. In 1990, the CFA was amended to dispense with the requirement previously imposed by courts that a plaintiff prove public injury in order to obtain standing. See 815 ILCS 505/1-505/12. Therefore, although the CFA is

primarily concerned with protecting consumers, a business may have standing if it is a consumer of another business's product. See Lefebvre Intergraphics v. Sanden Machine Limited, 946 F. Supp. 1358, 1368 (N.D. Ill. 1996). Here, Typographics was a consumer of Estrada's printing equipment and services.

Horty's principal argument is that under Rule 9(b), Typographics' Complaint falls short of stating facts with the requisite particularity. To state a CFA claim, plaintiff must set forth facts alleging that (1) defendants committed a deceptive act, such as misrepresentation or concealment of a material fact; (2) defendant intended to induce plaintiff's reliance on the deception; and (3) the deception occurred in a course of conduct involving trade or commerce. See Petri v. Gatlin, 997 F. Supp. 956, 967 (N.D. Ill. 1997). In its Complaint, Typographics alleges that by placing an advertisement for the equipment in furtherance of its scheme to defraud plaintiff, defendants engaged in conduct that "amounted to fraud, false pretenses, false promise and otherwise violated the provisions of" the CFA. (Am. Compl. ¶ 24.)

Again, Typographics does not describe specific details of the

deceptive act it charges Horty of committing. In fact, in Count III, plaintiff does not even identify Horty by name as it did in Count II. Unlike the plaintiffs involved in cases like Lefebvre and Petri, Typographics does not specify what statements contained in Estrada's advertising or promotional materials contained a misrepresentation or concealed a material fact. The ad itself merely lists the prices of the various equipment Estrada sold. In Lefebvre, the plaintiff alleged that the defendant made false statements concerning the capabilities of its printing press. See Lefebvre, 946 F. Supp. at 1366. In Petri, the plaintiffs charged that defendants falsely stated that its products would enable a customer to save 15% to 35% on annual gas bills. See Petri, 997 F. Supp. at 969. Typographics merely alleges that defendants created and circulated an advertisement to sell merchandise and to "further its scheme to obtain funds without delivering merchandise for same." (Am. Compl. ¶ 20.) This is not enough to put Horty on notice of the nature of Typographic's CFA claim.

Furthermore, without more facts illustrating how Horty violated the CFA, Typographics cannot defeat Horty's motion to dismiss on this claim.

This is especially true in light of the fact that judgment has already been entered on the CFA claim against Estrada. Horty is the only remaining defendant and Typographics has not made clear what role he played, as an individual, in placing the allegedly deceptive ad. "In a case involving multiple defendants . . . 'the complaint should inform each defendant of the nature of his alleged participation in the fraud.'" Vicom v. Harbridge Merchant Services, 20 F.3d 771, 778 (7th Cir. 1994) (citation omitted). Yet, as the Petri court noted, when plaintiffs generally allege that individual defendants were responsible for conduct in violation of the CFA, the notice pleading requirements of Federal Rule of Civil Procedure 8(a) are satisfied. Petri, 997 F. Supp. at 969. As such, the court will dismiss Count III without prejudice and permit Typographics to amend its complaint so as to cure these defects.[3]

---

[3] Due to an error in the record, the existence of a pending motion in this case was not brought to the court's attention and did not show up on the court's tracking system. Once it was discovered, the court ruled.

## Conclusion

For the reasons set forth above, the court grants Horty's motion to dismiss Count II with prejudice and grants his motion to dismiss Count III without prejudice [13-1]. The court grants Typographics leave to file a Second Amended Complaint consistent with this opinion. Failure to amend Count III of the First Amended Complaint within 30 days of this ruling will result in dismissal of Count III with prejudice.

ENTER:

*[signature]*

**Ann Claire Williams,
Judge**

**Dated: July 14, 2000**
g:\civ.opn\typographics.opi